Welcome back everybody. Our fourth argument this morning is 20-1182, Friends of Animals v. Bernhardt. Mr. Hurnick, you may proceed. Thank you. Good morning. May it please the court. I'm Stephen Hurnick representing Friends of Animals. The Freedom of Information Act does not permit the government to withhold from the public the names of people who voluntarily provide their names to Fish and Wildlife Service in order to import elephant and giraffe parts. I'll address the inadmissible hearsay evidence at the end of my argument, but I'd like to start by explaining why the services redactions under Exemptions 6 and 7c were improper because the vast majority of records at issue here were withheld pursuant to those exemptions. I'm going to focus most of my time discussing the lack of a privacy interest because if this court agrees that importers have no more than a that is the end of the inquiry and the district court must be reversed. FOIA establishes a strong presumption in favor of disclosure of records. Records may only be withheld if they fit within the limited exemptions that Congress included in the statute, which the Supreme Court has held are to be construed narrowly. And the service has the burden of proving that any exemptions apply. Here, the service withheld names under Exemptions 6 and 7c on the basis that its FOIA officer concluded that these individuals could conceivably be subject to harassment if their name was disclosed. But allowing the service to withhold these records on the mere speculation, the mere theoretical possibility of harassment, is not what Congress intended in enacting FOIA, is contrary to the Let me just ask, I think that there is nothing in the record that would support actual harassment that has occurred in this case, is that right? That's correct, your honor. And even further than that, there's nothing in the record that suggests that there's been any previous harassment of any individuals who imported elephant or giraffe parts or any harassment of individuals whose names were disclosed pursuant to FOIA for their import of wildlife parts. Thank you. You're welcome. Even in the absence of harassment, the briefing uses, for both sides, use the example of people going to adult establishments. Couldn't the fact that this is an activity that is scorned by a great deal of society itself subject the people to embarrassment? And so why isn't that at least more than a de minimis privacy interest, even in the absence of harassment? Well, you know, again, your honor, what the service relied on here was not the embarrassment or the scorn. The service specifically cited the threat of harassment. But even if we accept, simply for the sake of argument, that the service was worried about embarrassment or scorn, there's no evidence here that these people would be subject to embarrassment or scorn. It's really notable that the service has provided no evidence that any of these individuals don't want their their wasn't their sports hunter. And it may be a different context that they provided as some evidence of potential harassment. Yeah, yes, your honor. I think it's it's important to note how different that context was. This was not disclosure pursuant to FOIA. This was this was a really infamous case where an individual broke the law to to kill a beloved lion, Cecil the Lion, in 2015. That case received a great deal of media attention. But but but the reason that that person was subject to harassment was was not because they were importing wildlife parts. It was because they were they were breaking the law in doing so. And there's there's there's just no evidence that the service has provided in the record here of of any harassment, you know, in analogous situation. And I think it's also important to note here that we're dealing with no one is going to be singled out in these records, unlike that that example that you noted, your honor. So there's just no reason to think that these people are going to be are going to be subject to harassment. You know, if it's true, that's a relatively small universe. You know, really, what public interest is your client advancing by having access to or exposing their identities? I really don't, you know, I don't really see much on the other side of the ledger, either, if we get to a balancing. Yeah, your honor, well, well, you know, as an initial matter, there's there's no need to get to the balancing act at all, if you know, this court agrees with us that there's nothing more than a de minimis privacy interest here. But if but if the court disagrees and thinks thinks that there is some privacy interest that these individuals have names, you know, I would, you know, I would point to a couple things. And, you know, in terms of public interest, it's, it's really critical to know who who is importing these wildlife parks, this, the service is the agency that Congress has delegated to, to be in charge of setting the regulations governing governing the import of these wildlife parks into the country, it's the services current regulations that are allowing these individuals to import these parts. And these are not, you know, these are not static regulations, they're subject to a great, you know, great deal of change. Groups, groups like ours, groups like Safari Club International are regularly petitioning the agency to change these regulations. Yeah. Why does the why would the identity of particular importer matter matter for that analysis? And there's no there's no allegation of illegal conduct. No, you're on. No, there's no allegation of illegal conduct. But it's important to know who the stakeholders are. It's important to know what what are their what are their affiliations? Who is by virtue of the services current regulations, who is in fact, importing these parts? Are these people who have been convicted of previous what wildlife crimes? Are these people who are involved in conservation activities? Are the same individuals importing parts over and over and over again, so that just a few individuals make up the vast majority of imports? These are important things to know. And I think I'd, you know, I'd point to a regulation that the service passed recently limiting the number of elephant trophies that one individual can import in a the FOIA interest there is not an interest in discovering what other people do. It's strictly limited to an interest in how the agency operates. So I take it what your point is, focusing not on trying to find other people so we can discover about them, but rather focusing on the agency. I assume what you're saying is that that this information would be useful to see if agency has favoritism and the people they allow to do importing, or if the agency does not adequately check on the backgrounds, or if the agency is allowing people to come in, in a way that that is somehow wrong with the agency. That's what you would have to prove what what are the allegations or proof that ties it to the agency? That's, that's right, Your Honor. And these, these two things are inextricably linked. Who is importing the parts is inextricably linked. It's not so we can, it's not so that somebody can, can go after them. It would have to be so that somehow the agency is doing something improper, or at least worthy of the daylight of disclosure. Well, it's not even a suggestion that the agency is necessarily doing anything improper here. It's, it's, it's simply what, what are, what are the, what are the influences on, on the agency and making these decisions? Who, who are, who are the stakeholders? Who, who are importing these parts that, that is leading to, you know, to, to these current regulations that we have that, that are allowing these individuals to, to import these parts? And I mean, wouldn't that go ahead, chief? I mean, wouldn't that be true with, um, uh, you know, sort of assuming for purposes of my question that it's a, you know, a law enforcement purpose. Um, you know, the, the argument that we need, you know, we need these FOIA information to see if the agency is engaged in misconduct, that would be, um, true for any law enforcement agency. Wouldn't that swallow up the exemption if, if it's not, if, if we credit that? Well, again, your honor, we're, we're not necessarily alleging that the agency has engaged in any, in any misconduct here. We're, we're, we're simply, we're simply trying to understand who are, who are the people, who are the groups that are, that are potentially influencing the agency in, in, in establishing the regulation. How is that different from any other agency FOIA request? I mean. Well, well, your honor, Fish and Wildlife Service is, is, is the agency that is in charge of, of setting, setting these regulations. And it has, it has different regulations in charge, you know, in effect for, for different species. So it's, it's, it's important to know who is importing, you know, what is the cross-section of individuals importing these regulations? What, what affiliations do they have? What groups do they represent? What, what is, what is their background? Are they involved in conservation? Have they convicted, been convicted of wildlife crimes? This, this is all informing the public's understanding of whether the current regulations that are, that the service has put in place to governing the import of these animals are, are sufficient or whether they need change. And, and that, that can help the public, you know, petition the service for, you know, to change these regulations. You know, I, I almost hate to bring this up, but I, I guess this is the world we live in. Going back to the harassment or ostracism point, you know, information can be disseminated so quickly and in such inflammatory ways through the internet and social media. You know, can, can we as a court, as a panel take into account, you know, kind of this exhilaration of, you know, and polarized use of personal data in all, you know, many other, you know, aspects of life, not just here. And, you know, it's legitimate for us to worry about what it, what uses these, this data might be put to, you know, vis-a-vis the, the, the importers and, you know, people, you know, related businesses and those sorts of things. Is that a relevant consideration for us? It's, it's an interesting question, Your Honor. And I mean, I think the important thing that I would note here and what, what this court has previously recognized in, in Brown v. Perez is that when a requester is only seeking names and not seeking, you know, not seeking contact information, not seeking addresses, phone numbers, social media accounts, there is a much reduced concern of, of harassment, you know, and that's, you know, and that's the case here. We're, we're only seeking the names of these people. We're not challenging the redactions of any, of any addresses. So, so we're not, you know, we're not intending to, to, to reach out and- And what is your interest? What is your interest in the names? The interest in the names, Your Honor, is as I have explained why, you know, we want to how many people- How does that impact, how does that impact the conduct of the agency? Because, because it's going, it is going to impact whether the service's current regulations are adequate, what, you know, and what, what changes may or may not, you know, need to, need to be made to those regulations. You know, I mean, just going back to- Couldn't you submit a request to the board? More broadly, my question is, are there alternative means for obtaining the information that your organization needs, or is this, this is, is this the only way that you can get it? Well, I think, I think that, that hypothetical request might satisfy one, you know, one narrow reason why we want the information, but, but, you know, we want the names for, for more reasons than that, than just that. You know, we need to know the, the affiliations, whether they've, you know, whether they've been convicted of public crimes, you know, et cetera. You know, you know, and I mean, a couple other, you know, points just to touch on quickly, you know, I think it's, it's important to distinguish between the elephant records and the draft records here. The service admits in their, in their brief that the names of these people who import elephant trophies are already in the public domain. Those individuals have no interest in the names. That's what I could use some help with, with regard to the elephant parts. Since a permit is required, what marginal benefit would it be for you? Obviously, it seems that you would all, you already are able to access the names of individuals that apply for and that receive permits to import elephant parts. And now you want the names on the 3177s. So is it, is it, is the mark, what is the marginal difference for, for Friends of Animals? Is it that you will now be able to see which individuals exercise, carry out their permits by actually importing? And if so, how often they do it? Yeah, that could, that could be your honor. We, you know, we just, we just don't, we just don't know. But I mean, the key point is they don't have a privacy interest if their names are in the public domain. And I would like to reserve the limited time that I have. Okay. I'll give you a little bit more rebuttal time. Can I just ask you, we're not taking away from your rebuttal time, but I just didn't understand what you just said. So, but cause I'm just, it's not, it's not a trick question. I'm just trying to understand what exactly is the, is the practical difference between your current access to the, to the permits, the applications and the receipt of permits and the names on the 3177s or on the limits data. Can you just tell me what is, what is exactly the difference? You know, it's, it's a somewhat difficult answer to question your honor, you know, to answer your honor until, until we actually see, you know, see those documents in full that, that aren't, you know, that aren't redacted and we're able to, you know, we're able to match them up. I mean, it's, it's possible that, that there isn't much difference, but, but it's, but it's possible that, you know, that there, that there is a difference between what's already available, you know, and what's, and what we're asking for. But if there's a difference, it's only that the second list you want would be a lesser included list of names from the larger group that you already have. But you know, that, I mean, that's, that's, that's possible your honor. You know, I would note that our request also asked for, you know, for any permits that were denied to, you know, to individuals that, you know, that had applied for, and that's, you know, that's not something that's, that is reflected. All right, counsel, let's, let's hear from the government. Ms. Miller. Good morning. May it please the court. I'm Marissa Miller on behalf of defendant David Bernhardt and the United States Fish and Wildlife Service. I think I'd to start by refuting counsel's discussion of the record evidence for harassment, because I think that's very important. The district court actually made a finding on page 499 of the record that the agency's concerns about harassment were reasonable and not speculative. The court based that evidence or based that conclusion on evidence in the record that can be found at pages 452 to 453. So, to the extent the plaintiff is arguing that, in fact, there was no evidence of harassment, it is essentially asking this court to reweigh that evidence on appeal. And don't we have to do that, because this is not a, this, this is not a trial of stipulated facts. You all elected to litigate this through a motion for summary judgment, and even though this is a matter of law, don't we, because it's summary judgment, have to view the evidence and the like most favorable to friends of animals. In doing so, don't we have to credit the fact that a reasonable fact finder could conclude that their threat of harassment is speculative? Your Honor, I think my response to that would, would be twofold. The first would be that when we talk about the potential for harassment, we're not talking about the certainty that these people will be harassed. You know, it's really how many instances of harassment do you need to demonstrate that there is a privacy interest here? Which would bring me to my next point, which is that the question of a privacy interest isn't purely factual. There's a real legal component to it, and that's why it's important to recognize that this concept of privacy that's protected by FOIA's exemptions, the Supreme Court has said is expansive. It's not a cramped notion. Personal privacy encompasses an individual's right to control all of the information about himself. Information is private if it's restricted to a small group of people and not freely accessible to the public. When that information was given, it was given with the knowledge that it could be arguably obtained through FOIA. Yes, Your Honor. That is, that is true, but we also have to consider what else the submitters were told about when they provided that information, which was essentially that the government would not transfer this information or sell it or give it to anyone unless it was required by law. And even if it was required by law, the agency was going to do everything in its power to guarantee that the privacy rights of the submitter were protected. And I, you know, this idea that plaintiff suggests where these importers are even if we're going to analyze it from that perspective, we have to think about the sort of silent contract that they engaged with, with the government and, you know, what sort of assurances of privacy that the government gave them. This is, you know, another situation where the district court found the government gave them assurances of privacy. That's at page 488. And then, you know, even if you look deeply into the record, they, the agency actually testified that the submitter that's involved in the exemption for issues, they, they had no idea, despite, you know, seeing that notice that there was any chance that their information was going to be made public. And I guess, I mean, you know, maybe they're not lawyers, but, you know, if they were to talk to any lawyer, they would say, yeah, when you submit anything to a state entity, you're going to have a subject to the open records act. Most likely, if you submit something to the federal government, you have FOIA. So, I mean, they may not know that, but, but I don't know what difference that makes. Well, your honor, there's also another presumption, which is that FOIA should be interpreted broadly to give citizens access to government information. That's another presumption and interpretation of FOIA that we have to keep in mind. So, I think my response about, you know, the fact that the submitters were warned that their information was subject to FOIA is, I think, as Magistrate Judge Hagerty, you know, astutely pointed out, that really can't be something that eliminates the privacy interest altogether. Because ultimately, I think all information that's submitted to the government is subject to FOIA. So, we, if we say that, you know, the fact that this information could be released under FOIA negates a privacy interest altogether, then no one has a privacy interest anymore. Can I, can I follow up? I'm trying to monopolize your time, but I have a question. Now, you said that they have a privacy interest in not letting this information be out. Their names are already out there, aren't they? And to follow up on what we were discussing with Mr. Hernick, the, at least for the elephant parts, all of those individuals, if they're importing, they already have received a permit. And my understanding is that FWS has already published on their website for this time period, all of the individual's names who have received permits for elephant parts, right? No, your honor. That's not correct. So, let me clarify. The people whose names are in the public record are the people who received trophy permits from the Fish and Wildlife Service. The, the number of permits in the elephant response is incredibly small. I tried to count them last night. There's nine in the 850 page response. The rest of the elephant response is documents that have never been released to the public. And, you know, part of the reason that those permits are such a small part of the elephant response is that, well, most of the elephant response is about commercial importers. And so we, we actually have the name of the business. And in those cases, it's the name of the individual who's associated with the business. I think the example I used in my brief was, you know, the employee at Christie's who's coordinating the not the, you know, the few people who've applied for these trophy permits and their names are in the public record. But if you have a Bob Bacharach LLC, that, that name is already been provided to Friends of Animals. Yes, your honor. But you just won't say that it's Bob Bacharach, so the only individual with Bob Bacharach LLC? No, your honor. And, you know, I guess if I had to come up with an explanation for that, I think if you're going to put your own name in the title of your exotic animal import company, you're probably okay with people knowing that you import these animals. Isn't that the whole problem to get back to Mr. Hurdick's point is we really don't know whether or not these individuals have any hesitation about letting their name be known, right? I mean, you're, you're, you are making an assumption that this is an activity that we really don't know that. And we are on summary judgment where we have to view those inferences like favorably to Friends of Animals. Your honor, I think my response to that would be the question about privacy interests is ultimately it's an objective one. It's not a subjective one. So the, you know, the government doesn't need to submit 5,000 affidavits from every single one of these individuals whose names appear in these records to demonstrate that this is in fact something that they have a privacy interest in, especially when, you know, the Supreme Court has told us that this is very much a situation where someone would have a privacy interest. You know, I think at the same time, I would, you know, I would note that the Tenth Circuit has, I think, almost always found a personal privacy interest in FOIA cases when we're dealing with a list of names. And I, you know, I know Mr. Hernick said that in Brown versus Perez, we talk about, yeah, the context matters, but every single situation where we've had a FOIA case involving a list of people's names, this court has said that that's something that's private. But I will say, I would actually, if the court doesn't have too many questions about privacy, I would love to pivot to the public interest aspect because I think that is pivotal to this case and kind of where the rubber meets the road. With regard to public interest, the Supreme Court in this court has given it a very narrow definition in the context of FOIA. The purpose of FOIA is to open up agency action to the light of public scrutiny. So disclosure is only in the public interest if the documents shed light on what the government's done. I actually want to focus more specifically. I mean, to me, there are several agency actions that might be put to light here. One, does the agency deal only with a few importers that are favored or that are politically connected, that are people that have been convicted in the past of violations? Is the agency's supervision of the people with whom it deals adequate? Those are all things focusing on the agency, which I think could be revealed only if you had the names of the people importing those documents. The response to that would be, okay, so I think we can take the plaintiff's public interest and divide them into two categories. The first one would be this idea that having information about the people who do this will help us figure out if there are some new or different regulations we need. I mean, if it's all the same people doing it or if there's something else problematic there. But we have to draw the distinction between government records that shed light on what government is doing versus government records that contain information about private citizens that could be useful for us in deciding what we want the government to do moving forward. And the reason we have to draw that distinction is because if you think about it, that second category is enormous. There is almost no information in the government's possession that you can't say, well, this might be useful if we decide down the road we would like to regulate X. So I think that that's very problematic for me. FOIA is about what the government is doing, not what the public is doing. You're not completely at risk, even if that is an enormous list, because you've still got another line of defense. If it gets such an enormous list that the value gets quite attenuated, you still have to come up with a balancing case. And if it is so enormous, you've got a much more complex case. If you want to pitch the fight, it's not that the government doesn't have an interest, or that the applicant doesn't have an interest. It is how strong is that interest? I mean, I would argue that the interest here is not strong, because I think as you sort of alluded to, and as plaintiff has mentioned, we don't know what the documents will show until we see them. And so that is, again, an argument that can be made about essentially everything in the government's possession. But the other category that I think is kind of similar, that I also want to address why it's very problematic, is this idea that getting information about who the service allows to import these animals will kind of let us double check and see that the service is doing their job properly. And ultimately, that's just another way of saying that the plaintiffs think that the government officials who are responsible here might, you know, might not be doing their job, might be acting negligently, might be being improperly influenced by these outside groups. There is certainly a public interest in finding out that information. However, the Supreme Court was very clear in National Archives versus Favish, that if that is the public interest that you are relying on, you have to put forth at least some evidence to back up those suspicions. And there is nothing in the record to support these unidentified suspicions that the plaintiff seems to have about the service not enforcing its own records. I would like to touch on Judge Bacharach's question also about the fact that, you know, a very small portion of these names are in the public domain. And I think that there are two ways to analyze that question. And one of them is, I think, the plaintiff's position that, okay, well, these permits are already in the public domain. And, you know, I think it's worth noting that the service, it's not just that the permit applications are already in the public domain, but the services permitting division has never had any objection to providing the permit applications and information about whether they were granted or denied to the plaintiff. So what we're fighting about, ultimately, is releasing those permits the plaintiff can already access as they appear in this law enforcement database. And the correct way to analyze that situation isn't, oh, well, the services already released these in one context, and those are kind of similar, so we should release them here. And I cited some case law in my brief about this idea that we don't hold the agency's other disclosures against it. And the reason for that is if we start punishing the agency for releasing similar documents, then we agency to start withholding as much as possible. So in this situation- What I don't understand, though, Ms. Miller, is he didn't ask for data on the LEMIS database. He asked for the 3177s. And so what I understand FWS did was they simply, you called it a compilation, he says it basically transposed the information from the 3177 to the LEMIS reports. And then you say, well, this is a law enforcement document. Well, isn't that a little disingenuous? Because he hasn't asked for the law enforcement document. He would be happy with the 3177s, which are not law enforcement compilations. So I guess I would disagree with that because I firmly believe that the Form 3177, which is included in the law enforcement database, is a document compiled for law enforcement purposes. Fair. And I misstated that. I understand your argument. But my question is really about the LEMIS database. Why does it matter that it was Why does that substantively give you greater rights than if it had never been transposed and you just have the 3177s? Is there a difference between the fact that it's a 3177 and appears in the LEMIS database? I mean, so I will say that the difference in the services view is that Exemption 7C doesn't apply to the permit applications. So we're not enforcing Exemption 7C there. However, again, I would urge the court not to hold the fact that the service has always been willing to provide these permit applications against us in our attempts to hold on to this exemption for 7C. If the court has no further questions. Thank you, counsel. I'll just give 30 seconds for Mr. Henrich to rebuttal. Thank you, Your Honor. Just three quick points. First, it's not that the service has to provide 5,000 affidavits from different individuals here. It's that the service must provide some evidence that this information is private. It's the service's burden to establish a privacy interest here, and the service simply hasn't done that. Second, the fact that the individuals provide this information voluntarily to the service despite being warned that it could be disclosed pursuant to FOIA doesn't necessarily negate the privacy interest, but certainly a relevant consideration here. And just finally, the service doesn't explain any inconsistency here. It's regularly providing these names, disclosing these names in other contexts. Why is it redacting them here? And thank you for your questions. I appreciate your arguments. You shall be excused and the case submitted.